IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ENTERPRISE LIFE INSURANCE COMPANY, et al.,
*Plaintiffs/Appellants*,

v.

STATE OF ARIZONA DEPARTMENT OF INSURANCE,
*Defendant/Appellee*.

No. 1 CA-CV 19-0359
FILED 3-26-2020

---

Appeal from the Superior Court in Maricopa County
No.  LC2018-000254-001
The Honorable Patricia A. Starr, Judge

**VACATED**

---

COUNSEL

Kutak Rock, LLP, Scottsdale
By S. David Childers, Tasha N. Cycholl, Jennifer L. Kraham,
Paul S. Gerding, Jr.
*Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Lynette J. Evans
*Counsel for Defendant/Appellee*

---

**OPINION**

---

Judge James B. Morse Jr. delivered the opinion of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E**, Judge:

¶1        The Arizona Department of Insurance ("ADOI") found that Enterprise Life Insurance Company ("Enterprise") and National Foundation Life Insurance Company ("National") (collectively, "the companies") exited the Arizona individual health insurance market and were therefore prohibited from transacting business in the Arizona market for five years. The companies unsuccessfully challenged the ADOI's decision in the superior court and now appeal. Because A.R.S. § 20-1380 does not provide the ADOI with the authority to force the companies to exit the market, we vacate the ADOI's order.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Currently, the companies provide in-force health insurance policies that are labeled as "grandfathered" and "transitional" by the Patient Protection and Affordable Care Act ("ACA"). 42 U.S.C. § 18011; 45 CFR § 147.140(a)(1)(i). "Grandfathered" policies are those that were sold prior to the signing of the ACA in March of 2010. "Transitional" policies are those that were sold after the ACA was passed, but before its provisions went into effect on January 1, 2014. Both types of policies are somewhat unusual because they are exempt from the substantive and procedural requirements of the ACA. 45 CFR § 147.140(c)(1); 29 CFR § 2590.715-1251(c). So long as these policies continue to be offered for renewal by the insurer, existing customers can renew and continue this coverage. Important for our purposes, this renewal process takes place outside of the regulatory framework and ACA individual market ("ACA market").

¶3        While "grandfathered" policies may continue to be offered for renewal in perpetuity without ACA compliance, "transitional" policies must eventually comply with the ACA. The ACA first mandated that all "transitional" policies must be replaced with ACA-compliant essential health benefit policies ("EHB policies") by January 1, 2014. The Centers for Medicare and Medicaid Services ("CMS") have extended that deadline multiple times, most recently to January 1, 2020.

**¶4** The ever-changing deadline led the companies to believe the ACA required them to make new EHB policies available to their "grandfathered" and "transitional" customers. Accordingly, the companies filed rates with the ADOI to offer new EHB policies from 2015 to 2017, but no one purchased the EHB policies. The companies continued to renew the "grandfathered" and "transitional" policies for existing customers, relying on the extensions granted by the CMS.

**¶5** After the CMS extended the deadline to January 2019, the companies chose to discontinue offering new EHB policies, and instead only renewed their existing "grandfathered" and "transitional" policies. Accordingly, the companies did not file EHB policy rates with the ADOI by the June 1, 2017, deadline.

**¶6** In October of 2017 the ADOI sent the companies a letter explaining that by "failing to file plan year 2018 rates," the companies had provided the ADOI "with constructive notice of their intent to exit the individual market." The letter then directed the companies to terminate all in-force "grandfathered" and "transitional" policies by December 31, 2017, and take further steps to properly exit the market.

**¶7** The companies appealed to the Office of Administrative Hearings. At the evidentiary hearing, an ADOI assistant director, testified that when an insurer files EHB rates with the ADOI, it is then required by federal regulations to offer ACA compliant policies in the ACA market for that year. Thus, according to the ADOI, when the companies filed EHB rates between 2015 and 2017, they effectively entered "the ACA individual health insurance marketplace" and became subject to what the agency describes as the market exit provision of A.R.S. § 20-1380(D). That statute provides as follows:

> D. If a health care insurer elects to discontinue offering all health insurance coverage in the individual market in this state, the health care insurer may discontinue that coverage only if all of the following occur:
>
> 1. The health care insurer gives notice to the director at least five business days before the health care insurer gives notice to each individual of the intention to discontinue offering health insurance coverage in the individual market in this state.

2. The health care insurer provides notice to each individual of that discontinuation at least one hundred eighty days before the date of the expiration of that coverage.

3. The health care insurer discontinues all individual insurance or coverage that was issued or delivered for issuance in this state and does not renew any coverage that was offered or sold in this state.

¶8          According to the ADOI, when the companies failed to file EHB rates they, "elect[ed] to discontinue offering all health care insurance in the individual market," and A.R.S. § 20-1380(D) allows the ADOI to force them from Arizona's individual insurance market entirely.  The companies challenged the ADOI's interpretation of the statute, and argued that because the companies were still offering to renew their "grandfathered" and "transitional" policies to existing customers, they had not "discontinue[d] offering *all* health insurance coverage in the individual market."  A.R.S. § 20-1380(D) (emphasis added).

¶9          The ADOI responded that renewed policies are distinguished from new policies and "grandfathered" and "transitional" policies are "closed blocks of business," not offered or available for purchase in the individual marketplace.  The Administrative Law Judge ("ALJ") disagreed and reasoned that the term "offering all" includes both "the offering of the sale of new policies and the offer to renew existing policies."  As such, the ALJ found the ADOI failed to establish: (1) that the companies exited the market pursuant to the statute and (2) that grounds existed to suspend or revoke their certificate to transact business in the state.

¶10          The ADOI rejected the ALJ's reasoning and decision.  The ADOI found that the ALJ's decision "overemphasizes the importance of the word 'all' in the statute" and should have instead focused on the word "offering," which "constitutes an act by the insurer calculated to procure new business, not to merely retain existing enrollees."  Therefore, under the ADOI's interpretation, the companies "elected to discontinue offering all health insurance" because they stopped offering new policies in the individual market.

¶11          As a penalty, the ADOI first ordered the companies to comply with the remaining market exit provisions enumerated in A.R.S. § 20-1380(D)(1-3).  Second, the ADOI barred the companies from the Arizona individual health insurance market for a period of five years "as made clear by A.R.S. § 20-1380(E)."

¶12      The companies appealed to the superior court and challenged the ADOI's interpretation of the statute and corresponding penalties. The superior court affirmed, concluding that the word "all" in the statute "most logically refers" to offering new "guaranteed available insurance plans," and does not include the renewal of existing coverage. Therefore, the superior court found that the companies triggered the market exit provisions of the statute and must comply with the ADOI's order. The companies timely appealed. We have jurisdiction pursuant to A.R.S. § 12-913.

## DISCUSSION

¶13      On appeal, the companies challenge the ADOI's interpretation of A.R.S. § 20-1380 and the resulting order. When an administrative order is "based on an interpretation of law," this Court reviews the agency and superior court's interpretation *de novo, Saldate v. Montgomery,* 228 Ariz. 495, 498, ¶ 10 (App. 2012), and therefore is "not bound by the superior court's or the agency's legal conclusions," *JHass Group L.L.C. v. Ariz. Dep't of Fin. Insts.,* 238 Ariz. 377, 383, ¶ 20 (App. 2015). Further, in interpreting a statute, the primary goal is to determine and give effect to the legislature's intent. *DeVries v. State,* 221 Ariz. 201, 204, ¶ 6 (App. 2009). And "[t]he best indication of legislative intent is the plain language of the statute." *Bither v. Country Mut. Ins. Co.,* 226 Ariz. 198, 200, ¶ 8 (App. 2010).

¶14      Moreover, "the degree to which [an agency] can exercise any power depends upon the legislature's grant of authority to the agency." *Facilitec, Inc. v. Hibbs,* 206 Ariz. 486, 488, ¶ 10 (2003). Nothing in A.R.S. § 20-1380 authorizes the ADOI to compel an insurer to exit the market. Instead, the ADOI relies on A.R.S. § 20-142(B), which provides that the ADOI director "shall have the powers and authority . . . reasonably implied from the provisions of this title." The issue is therefore whether A.R.S. § 20-1380 "reasonably implie[s]" that the ADOI can force the companies to cancel their "grandfathered" and "transitional" policies and completely exit Arizona's individual insurance market.

¶15      As reflected in its title, the purpose of A.R.S. § 20-1380 is to provide "guaranteed renewability for all individuals[']" health insurance coverage. Arizona Senate Fact Sheet, 2000 Reg. Sess. S.B. 1032 (44th Leg., 2nd Reg. Sess., April 26, 2000). Subsection A enforces this purpose by requiring insurers to "renew or continue" existing coverage at the individual's request. A.R.S. § 20-1380(A). An "insurer may nonrenew or discontinue the health insurance coverage of an individual" only for the specific reasons enumerated in A.R.S. § 20-1380(B). Relevant here, (B)(3) provides an

exception when the insurer "has ceased to offer new coverage **and** has discontinued all in-force coverage in the market pursuant to subsection D of this section." A.R.S. § 20-1380(B)(3) (emphasis added). This provision clarifies that an insurer does not exit the market when it merely "cease[s] to offer new coverage" and has not "discontinued all in-force coverage."

¶16 Subsection D then provides that for an insurer to avail itself of the exception to mandatory renewability based on exiting the individual health insurance market, it must: (1) provide formal notice to the director; (2) provide timely notice to their existing customers; and (3) discontinue all individual insurance and not renew any coverage that was offered or sold in the state. A.R.S. § 20-1380(D).

¶17 The ADOI argues that when an insurer ceases to offer new coverage in the market, A.R.S. § 20-1380 gives the agency the authority to force an insurer to discontinue all in-force coverage pursuant to subsections B and D outlined above, and then revoke the insurers ability to do business in the state for a period of five years pursuant to subsection E.[1] But A.R.S. § 20-1380 does not authorize such action. The statute provides a checklist of what must be done when the insurer decides to discontinue both new and existing coverage. The legislature deployed permissive words ("elect" and "may") to authorize the insurer, not the ADOI, to make that decision. Beyond that, the statute protects renewability of coverage and does not expressly authorize the ADOI to force an insurer to discontinue in-force coverage. Therefore, subsections B and D establish a limited mechanism by which the insurer may choose to avoid guaranteed renewability under subsection A. They do not support the ADOI's proposition that an insurer's decision not to offer new coverage triggers the mandatory discontinuation of existing coverage.

¶18 The ADOI also argues that its authority to force an insurer to discontinue in-force coverage and completely exit the market is "reasonably implied" in the statute because otherwise an insurer will never act to comply with subsection D. This ignores both the text and purpose of the statute. If an insurer does not perform all the prerequisites of subsection D, then despite the insurer's preference to cancel existing coverages, an individual insured can enforce his or her right to renew an existing policy

---

[1] The ADOI only sought to force non-renewal of the existing coverages. The ADOI has not asserted that A.R.S. § 20-1380 provides express or implied authority to require the companies to continue to offer the previously offered new policies in order to renew the existing coverage policies.

pursuant to A.R.S. § 20-1380(A). Thus, the statute provides its own incentive for an insurer to comply with subsection D without the ADOI's intervention.

¶19        Rather than protecting existing insureds by providing guaranteed renewability of their health insurance coverage, the ADOI's order subverts the plain language of A.R.S. § 20-1380 and accomplishes precisely the opposite result—forcing the termination of an individual's insurance coverage against the wishes of both the insurer and the insured. In the end, the ADOI's claim of statutory authority fails because ADOI is seeking to accomplish what an insurer is forbidden from doing under subsection A. A.R.S. § 20-1380 provides for guaranteed renewability of existing coverage and does not "reasonably imply" that the ADOI can force an insurer to terminate or non-renew existing coverage simply because the insurer ceases to offer new coverage.

¶20        The ADOI further contends that if we do not adopt its interpretation of A.R.S. § 20-1380, insurers will be able to remain in the market without offering new policies. As a result, the ADOI argues that other insurers would stop offering new insurance policies, causing severe harm to the Arizona market. At bottom, the ADOI once again misinterprets A.R.S. § 20-1380 as a sword for the agency to wield, when its purpose is to shield the individual insured against loss of insurance coverage.

¶21        Finally, the ADOI contends this interpretation of the statute leaves the agency unable to enforce the five-year market ban provision of A.R.S. § 20-1380(E). Not so. The statute only provides that the ADOI wait until the prerequisites of subsection D have been met before enforcing subsection E as a deterrent to an insurer electing to non-renew existing coverages by exiting the market.

¶22        More broadly, the ADOI's arguments ignore the separation of powers. The "scope of an agency's power is measured by statute and may not be expanded by agency fiat." *Cochise County v. Ariz. Health Care Cost Containment Sys.*, 170 Ariz. 443, 445 (App. 1991). "[A]ny excursion" beyond what is granted by the legislature "is treated as an usurpation of constitutional powers vested only in the major branch of government." *Hibbs,* 206 Ariz. at 488, ¶ 10 (quoting *Cochise Cty. v. Kirschner*, 171 Ariz. 258, 261-62 (App. 1992)). If the ADOI is concerned that insurers will not offer new policies in Arizona unless the ADOI is empowered to force insurers to cancel existing "grandfathered" and "transitional" policies, then it should ask the legislature to grant it such power. The ADOI's order, and the well-

established principle that an agency's power is dependent on a grant of statutory authority, cannot coexist.

¶23  Because the companies have not performed the actions set forth in A.R.S. § 20-1380(D), the companies' insureds retain the protections of A.R.S. § 20-1380(A) against termination of their insurance. Further, neither the plain language of the statute, nor the implied authority derived therefrom, provide the ADOI with authority to force the companies to terminate existing coverages and take further steps to exit the market. Therefore, the ADOI's order requiring the companies to do so is contrary to law and must be vacated.

## CONCLUSION

¶24  We vacate the ADOI's order against the companies.



AMY M. WOOD • Clerk of the Court
FILED: AA